### IN THE

# SUPREME COURT OF JUDICATURE

#### OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, MAY TERM, 1877, IN THE SIXTY-FIRST YEAR OF THE STATE.

---

## KING v. REA ET AL.

CONVEYANCE.—*Shelley's Case.*—*Words of Limitation.*—A deed which "conveys and warrants" certain real estate to the grantee "during her life, in remainder to the issue of her body, their heirs and assigns forever," falls within the rule in Shelley's case, and vests in such grantee the title to such real estate, in fee-simple; the words "issue of her body" being words, not of purchase, but, simply of limitation.

SAME.—*Children.*—*Unborn Grantee.*—A deed which conveys real estate therein described to the grantee "and her children, and their heirs and assigns forever," vests the title to the same in her and her children then in being, though unborn, in common; but those begotten and born thereafter take nothing thereof.

SAME.—*Conveyance Pending Litigation.*—*Construction of.*—Where, during the pendency of litigation amongst devisees, concerning real estate devised to them, prior to final judgment and as part of the proceedings therein, a deed of conveyance of such realty is agreed to by such devisees, and authorized and approved by the court, such conveyance is to be construed according to its own terms, and not according to the decree of such court.

SAME.—*Married Woman.*—*Estoppel.*—Where a married woman joins with her husband in the conveyance of lands held in her own right, which purports to convey the entire estate therein, she is estopped from after-

wards setting up any title to such lands, whether it existed at the time of making such conveyance, or was subsequently acquired by her.

From the Marion Superior Court.

*N. B. Taylor, F. Rand* and *E. Taylor,* for appellant.

*J. W. Gordon, T. M. Browne, R. N. Lamb, B. Harrison, C. C. Hines* and *W. H. H. Miller,* for appellees.

BIDDLE, J.—Suit to quiet the title of lands. The appellant here was the plaintiff below. The names and the alleged interests of the appellees will appear in the statement of the facts. The complaint originally contained three paragraphs, but the first and second were dismissed.

The third paragraph presents the following state of facts, to wit:

That Martha W. Rea was one of the children, heirs at law and devisees of Nathaniel West, deceased, of Marion county, Indiana. Said West had a large estate; that he made a will in which he devised all his estate to his wife, during her life, and in remainder to his children, of whom Martha W. Rea was one. His widow, Mary B. West, took possession of said property, and became greatly involved; that she proposed that the heirs should take the estate, pay her debts, and settle twenty thousand dollars upon her, for her natural life, which was accepted.

Said Mary B. West filed her bill in chancery in the Marion Circuit Court, setting up said proposition, and asking that it be carried out, and for a partition; that on the 28th of October, 1852, such proceedings were had in said suit, providing for a partition, the payment of her debts, and the settlement of the twenty thousand dollars upon her for life. A commissioner was appointed to sell a part of said real estate, to pay the said debts and to realize the twenty thousand dollars; and by the consent of the adult heirs or devisees, of whom said Martha W. Rea was one, but a married woman, the residue of the real estate was ordered to be sold, and the proceeds divided amongst the

devisees, or invested by the commissioner, under the order of the court.

The court provided, amongst other things, that Martha W. Rea's share should be invested by the commissioner, in real estate, stocks or other property and undoubted securities, in the name of said Martha, and in a separate estate, and for the sole use of said Martha and her children; and that the husband of said Martha should have no control over said property, except by the order of a court of competent jurisdiction, upon application made in writing, showing good cause, and upon such conditions as the court should impose. That the commissioner invested a part of said Martha's interest in part of lot five, square fourteen, in the city of Indianapolis. That afterwards said Martha and her husband filed their petition in the Marion Circuit Court, asking permission to exchange said property for part of lot one, in square forty-four, in the said city. That said court ordered said exchange, and the commissioner to pay one thousand dollars of said Martha's interest in her father's estate as difference, and the exchange was accordingly made, on the 30th of December, 1854. That afterwards said Martha and her husband filed an additional petition, asking the leave and order of the court to exchange the last property for certain property which then belonged to Andrew Wallace, which was ordered by the court to be done, said Wallace paying five hundred and fifty dollars difference, which was ordered to be expended on the premises she received from Wallace. This transfer was made on the 22d of June, 1855.

The commissioner, having realized further funds belonging to said Martha, made other investments for her and her children, but the commissioner, in taking the deed, did not follow the directions of the court; that at the time of making the deeds from Andrew Wallace, and from Robson & Voorhees, to Martha W. Rea, Richard G. Rea was the only child then born unto said Martha

W. Rea; that afterwards said Martha and her husband filed their further petition in the Marion Circuit Court, asking permission to sell all of said real estate, or rather to exchange it with Winston P. Noble, for a farm of six hundred acres in Vermillion county, Illinois; that an order was obtained for said exchange, and on the 16th of May, 1862, said Martha W. Rea and husband conveyed all of said real estate to said Noble, and said Noble conveyed said six hundred acres in Illinois to said Martha W. Rea; and said court confirmed said transfer, made by said Martha and husband to Noble; that the land so conveyed to Noble is the same property, the title to which is sought to be quieted.

Said Noble, on the 8th of September, 1865, for a valuable consideration, conveyed and warranted a part of said real estate to plaintiff; and on the 4th of May, 1868, said Noble, for a valuable consideration, conveyed the balance of said real estate to said plaintiff, and he has been in possession ever since.

When the court ordered said Martha's interest in her father's estate to be invested in her name for herself and children, she was a married woman, and no such condition had been imposed by her father's will; and said Martha had no other means except what she got from her father's estate; and every exchange that was made was made by the permission and order of the court; that at the time of the exchange with Noble said Mary B. West had died, and said Martha was entitled to the absolute control of her estate.

It is further stated that the defendants, Richard G. Rea, Margaret Augusta Rea, Caroline Virginia Rea, Fanny Rea, Mabel Rea, Frederick Landers Rea and Victor Rea, are the children of said Martha W. Rea, and that she was the daughter of said Nathaniel West, deceased; that neither of them paid any consideration whatever for any part of said real estate, and that they and said Sampson Rea and Martha W. Rea are now claiming an interest in,

and right to, said real estate, under said deeds from Wallace and Robson & Voorhees, but in no other way or manner, but they or either of them have no interest whatever.

All the interest said Martha received from her father's estate was vested in said real estate.

The prayer is, that plaintiff's title be quieted, that defendants be enjoined from claiming said real estate, and all proper relief is asked.

The last will and testament of Nathaniel West, the decree in the suit of Mary B. West against Henry W. Ellsworth and others, the deed from Andrew Wallace to Martha W. Rea, the deed from Robson & Voorhees to Martha W. Rea, the record of the several petitions to the Marion Circuit Court, making the several exchanges set out in the complaint, the deed of Noble and wife to Martha W. Rea, the deed from Sampson Rea and Martha W. Rea to Mary E. Noble, the two deeds from Mary E. Noble and her husband to the appellant, and some other papers which need not be stated were made exhibits, and thus became a part of the complaint.

The appellees were all served with process, and all, except Sampson Rea and Martha W. Rea, were infants, for whom guardians *ad litem* were appointed. Several of these filed separate demurrers to the complaint, which were overruled and exceptions reserved; but no question arising on these exceptions has been noticed in the briefs, by either of the parties. Sampson Rea and Martha W. Rea were defaulted.

Margaret Augusta Rea answered in two paragraphs. The first is the general denial. The second states, that on the 21st day of July, 1855, Wallace conveyed to Martha W. Rea, the mother of said Augusta, for and during the term of her natural life, lot one, and said three and three-quarters acres (describing it), and in remainder to the issue of the body of said Martha W. Rea, and their heirs and assigns forever; that she and the other children

of said Martha, by virtue of said deed, took the remainder in said real estate, subject to the life-estate of said Martha.

The said paragraph further states, that on the 29th of December, 1853, Robson & Voorhees conveyed the land described in their deed set out in the complaint, to Martha W. Rea and her children; that the said Margaret Augusta and Richard G. were the only then begotten children of said Martha W. Rea, and the title to said real estate vested in said three persons, and they became tenants in common thereof, and that her title never became divested of her said interest therein. The remainder relates to the possession and rents and profits, which it is not necessary to set out.

Margaret Augusta Rea, Caroline Virginia Rea, Fanny Rea, Mabel Rea, Frederick Landers Rea and Victor Rea answered jointly, in two paragraphs:

1. General denial; and,

2. That the deed of Andrew Wallace to Martha W. Rea, for life, and then in remainder to the issue of her body, vested the title to the land therein described in said Martha for life, and in remainder in these defendants and Richard G. Rea, as the issue of the body of said Martha, and the said title in remainder has never been divested by any act of theirs, or any legal proceedings to which they were parties.

Richard G. Rea answered in three paragraphs:

1st. The general denial;

2d. That as to so much of said third paragraph as relates to lots two, twenty-one, twenty-six and twenty-seven, in said Robson & Voorhees' subdivision, he says that he is the son of Martha W. Rea, and was born on the 8th of May, 1853, and that on the 8th of April, 1855, and on the 29th of December, 1855, he was the only living child of the said Martha W. Rea; that on the — day of April, 1855, Robson & Voorhees were the owners in fee-simple of the said real estate; and then conveyed the same to Martha W. Rea and her children, and their heirs

and assigns forever; that said deed was acknowledged on the 29th of December, 1855; that he was then the only living child of said Martha, and one-half of said real estate vested in him, and he is now the owner in fee-simple, in his own right, and he claims to hold it under said deed; and,

3d. Sets out that so far as concerns the land covered by the deed of Andrew Wallace to said Martha, said Wallace was the owner in fee-simple, on the 21st of July, 1855, and that he conveyed to said Martha W. Rea, during her life, and in remainder to the issue of her body, their heirs and assigns forever; that he was born of the body of said Martha, during wedlock, on the 8th of May, 1853; that the only claim of plaintiff is derived through Martha and her husband to Noble, and that defendant's interest has never been divested; that Martha W. Rea only took a life-estate, and the issue of her body took the remainder; that the plaintiff denies his right as a remainder man.

To each of the above special paragraphs of answer a separate demurrer was filed, alleging the insufficiency of the facts stated, as ground. Each demurrer was overruled, and exceptions to the ruling reserved. Replies in denial were then filed to each of the special paragraphs of answer. Upon these issues, on the 16th day of March, 1874, the case was tried by the court,—the intervention of a jury having been waived,—and the court found and decreed as follows:

*First.*—That plaintiff has an estate during the natural life of Martha W. Rea, and no longer, in the real estate covered by Wallace's deed.

*Second.*—That the said Richard G. Rea and his brothers and sisters own said real estate, in remainder, subject to plaintiff's said life-estate.

*Third.*—That Edward King, Richard G. Rea and Margaret Augusta Rea own the real estate covered by the deed of Robson & Voorhees, as tenants in common; and that Sampson Rea, Martha W. Rea, Caroline Virginia

Rea, Fanny Rea, Mabel Rea, Frederick Landers Rea and Victor Rea have no interest in the same, and that Richard G. Rea and Margaret Augusta Rea each recover one undivided third of said real estate from plaintiff; and that plaintiff's title to one undivided third be quieted.

*Fourth.*—That plaintiff has had possession of said real estate since November, 1868, and that he is liable to Richard G. Rea and Margaret Augusta Rea for their share of the rents and profits during that time; and that the rents and profits, and the improvements made by plaintiff, are equal in value, and are set off against each other.

*Fifth.*—The court orders partition.

And thereupon the plaintiff files a motion for a new trial, for the following causes:

"1st. The finding is contrary to the evidence;

"2d. The finding is contrary to the law and evidence;

"3d. The finding that Martha W. Rea's children," (naming them) "have the remainder, subject to Martha W. Rea's life-estate, in any part of said real estate, is contrary to law and evidence;

"4th. The finding that Richard G. Rea and Margaret Augusta Rea are each entitled to one-third of said lots two, twenty-six and twenty-seven, described in the complaint, is contrary to law and evidence;

"5th. The court erred in finding and decreeing that said Martha's children are entitled to, and own in remainder, any part of said real estate; and,

"6th. The court erred in finding and decreeing that Richard G. Rea and Margaret Augusta Rea were owners in fee-simple of any part of said lots two, twenty-six and twenty-seven, in complaint described:"

Which motion was overruled, and an exception saved.

On the 12th of November, 1874, plaintiff filed a motion for a new trial, as a matter of right, and a new trial was granted.

Leave was granted at same term to file supplemental complaint, and same was filed.

The supplemental complaint sets out the fact, that since the former trial Richard G. Rea has departed this life, intestate, never having been married, and that his father and mother, Sampson Rea and Martha W. Rea, and his brothers and sisters, Margaret Augusta Rea, Caroline Virginia McIlvain, *nee* Rea, Fanny Rea, Mabel Rea, Frederick Landers Rea and Victor Rea, are his only heirs at law, and whatever interest he had in the lands in the original complaint described descended to them, as his heirs at law; that they are now claiming said land, as his heirs at law.

That whatever interest he had descended, one-half to his father and mother and the other half to his brothers and sisters; that the half that descended to Sampson Rea and Martha W. Rea passed to plaintiff by virtue of their warranty deed to Noble, and by Noble to plaintiff, and said Sampson Rea and Martha W. Rea are estopped to set up any claim to said real estate; but plaintiff says Richard G. Rea had no interest in said real estate.

Process was issued on the supplemental complaint and duly served.

On the 24th of November, 1874, proof of notice of new trial granted was made; also proof of service of summons.

Sampson Rea entered his appearance.

Thomas M. Browne was appointed guardian *ad litem* for the infant defendants.

The defendants all filed demurrers to the supplemental complaint, which were overruled, and exceptions reserved.

Martha W. Rea answered the supplemental complaint:

1. General denial; and,

2. Denying that she is estopped by her deeds.

Sampson Rea and Martha W. Rea filed a joint answer, in two paragraphs, substantially the same as Martha's separate answer, and claimed partition.

Margaret Augusta Rea answered in two paragraphs:

1st. The general denial; and,

2d. Claiming one-third interest in said real estate covered by the Robson & Voorhees deed, as one of the children in existence when the deed from Robson & Voorhees to Martha W. Rea and her children was executed; also an interest in remainder in the real estate covered by the Wallace deed; also part of said real estate, as heir of Richard G. Rea, and asking for partition.

Caroline Virginia McIlvain, nee Rea, Fanny Rea, Mabel Rea, Frederick Landers Rea, and Victor Rea, all infant heirs, answered the supplemental complaint jointly:

1st. The general denial; and,

2d. Claiming a remainder in part of the estate, under the deed from Andrew Wallace to Martha W. Rea, also as heirs of Richard G. Rea, and asking partition.

Separate demurrers were filed to the second paragraph of Martha W. Rea's answer to the supplemental complaint, and to the second paragraph of the joint answer of Sampson Rea and Martha W. Rea, which were sustained, and exceptions reserved. Separate demurrers were also filed to the special paragraph of answer filed by Margaret Augusta Rea, and the joint answer of the infant heirs, which were overruled, and exceptions reserved. Replies were then filed to each of the second paragraphs, to which demurrers were overruled, and the case thus put at issue.

A jury was waived, trial by the court, finding and decree as follows:

First.—That the appellant is the owner in fee-simple of the undivided one-fourteenth of certain lands, and the owner of the undivided thirteen-fourteenths of the same lands, as tenant for the life of another, during the natural life of Martha W. Rea, and no longer. That Margaret Augusta Rea, Caroline Virginia McIlvain, nee Rea, Mabel Rea, Fanny Rea, Frederick Landers Rea, and Victor Rea are owners of the undivided thirteen-fourteenths of the same lands, in remainder, after the death of Martha W. Rea.

Second.—That the appellant is the owner in fee-simple of

one undivided half of certain lands, and Margaret Augusta Rea the owner in fee-simple of the undivided thirteen-thirty-sixths of the same, and each of the other five minors named the owner of one thirty-sixth part of the same lands, as tenants in common.

*Third.*—That Sampson Rea and Martha W. Rea are estopped by their deed to Mary E. Noble, from setting up any title to said lands.

*Fourth.*—A decree for rents and profits against the appellants.

*Fifth.*—A decree for partition.

*Sixth.*—Costs.

Motion for new trial made. Causes assigned. Motion overruled. Exceptions taken. Final decree. Appeal to the general term, wherein all the points raised upon the pleadings, and by both motions for a new trial, were assigned as error. Judgment in all things affirmed, in general term. Appeal to this court, and the proper error assigned here.

1st. The appellant claims, that the deed from Andrew Wallace, which " conveys and warrants to Martha W. Rea, during her life, in remainder to the issue of her body, their heirs and assigns forever," invests in her a fee-simple of the lands described therein; and,

2d. That the deed from Robson & Voorhees, which conveys the lands described therein " to Martha W. Rea and her children, and their heirs and assigns forever," also invests in Martha a fee-simple.

1st. The appellees insist, that the deed from Andrew Wallace vested in Martha W. Rea an estate for life only, with remainder to her children and their heirs; and,

2d. That the deed of Robson & Voorhees conveyed the lands to Martha W. Rea, and a trust estate therein to her children; not only to her children then in being, but also to her children subsequently born.

Both parties claim support from the decrees of the Marion Circuit Court for their respective titles, and their sev-

eral records, in the construction of the Wallace deed, and the Robson & Voorhees deed, to Martha W. Rea, which proceedings, they think, must affect the construction of these two deeds. It is said that certain trusts were created in favor of the children of Martha W. Rea, and certain restrictions imposed upon the parties in their powers to convey the lands in controversy, by the decrees of the court; but, as far as it is shown by the evidence in this case, the proceedings remained *in fieri,* and were pending until after the deed from Wallace, and the deed from Robson & Voorhees, to Martha W. Rea, and the deed from Martha and her husband to Mary E. Noble, were authorized and approved by the judgment of the court. Before the making of these deeds there had been no final judgment rendered by the court, and no right had become vested; and whatever trust had been created, or power restricted, before any right had become vested, would be subject to change or modification by the court at any time before the final decree was rendered. Nor was there any trust or restriction laid upon the land by the will of Nathaniel West. It was in the power of the devisees, under the authority of the court, to dispose of it as they chose; and that the deeds of Mary E. Noble and her husband conveyed to the appellant all the estate that Mary derived from the deed of Martha W. Rea and her husband is not in dispute. In this view, we can not see how the decrees of the Marion Circuit Court can affect the construction of the deeds to Martha W. Rea. They were authorized and approved by the court, made by competent parties and have received no judicial interpretation. We think, therefore, that the decision of this case depends upon the construction of these two deeds.

By the common law, the estate conveyed to Martha W. Rea, by the deed of Andrew Wallace, was a conditional fee, and when the condition happened, it became a fee-simple, and then the vendee could alienate. The fee simple vested in the beginning of the estate, and the power

to alienate upon the happening of the condition. 2 Bl. Com. 110; *Willion* v. *Berkley*, 1 Plow. 223.

By the statute of Westminster Second, (*De Donis Conditionalibus*) or rather by the construction which the courts gave to that statute, an estate in fee-tail was created in the vendee, out of the conditional fee, with a reversion, on failure of issue, to the vendor. But by the statute of Indiana (1 R. S. 1876, p. 368, sec. 36,) "Estates tail are abolished; and any estate which, according to the common law, would be adjudged a fee-tail, shall hereafter be adjudged a fee-simple; and if no valid remainder shall be limited thereon, shall be a fee-simple absolute."

There never was such an estate, " according to the common law," as a fee-tail; but the legislature doubtless meant the fee-tail created out of a conditional fee by the statute of Westminster Second. Coke says :

" Tenant in fee taile is by force of the statute of W. 2. cap. 1, for before the said statute, all inheritances were fee simple ; for all the gifts which be specified in that statute were fee simple conditional at the common law, as appeareth by the rehearsall of the same statute. And now by this statute, tenant in taile is in two manners, that is to say, tenant in taile generall, and tenant in taile speciall." Co. Lit. 18 b., 19 a; 2 Bl. Com. 112.

Estates tail being abolished, a conditional fee, "if no valid remainder shall be limited thereon," becomes a fee-simple. We are thus conducted to the question, is the remainder limited in the deed from Andrew Wallace to Martha W. Rea valid ? We think it falls within the rule in Shelley's case, which, in this State, is settled as a law of property. The deed conveys and warrants to Martha W. Rea, during her life; the inheritance, which, by statute, (1 R. S. 1876, p. 364, secs. 12, 14,) is conveyed by the words, " conveys and warrants," is limited to the issue of her body,—the inheritance and the remainder in the deed being one and the same estate. In such cases, the rule in Shelley's case applies, and the first vendee takes the en-

tire estate. In our opinion, Martha W. Rea, by the deed of Andrew Wallace, took a fee-simple in the lands conveyed. In this deed the words, "issue of her body," must be held as words of limitation, and not as words of purchase. It was held, in *Gonzales* v. *Barton*, 45 Ind. 295, DOWNEY, J., delivering the opinion of the court, that the words, "lawful issue," were words of limitation, and not words of purchase.

This case must be followed. It is too firmly sustained by the previous decisions of this court, to be departed from as a rule of property. *Small* v. *Howland*, 14 Ind. 592; *Hull* v. *Beals*, 23 Ind. 25; *Siceloff* v. *Redman's Adm'r*, 26 Ind. 251; *Tipton* v. *La Rose*, 27 Ind. 484; *Andrews* v. *Spurlin*, 35 Ind. 262.

The cases of *Sorden* v. *Gatewood*, 1 Ind. 107, and *Doe* v. *Jackman*, 5 Ind. 283, cited by appellees, arose before the adoption of our statutory conveyance, when it was necessary to use words of limitation in the deed to convey the inheritance, and therefore are not authority now.

In contesting the application of the rule in Shelley's case, to the deed from Andrew Wallace to Martha W. Rea, the appellees cite numerous cases, besides the last two, *supra*, but we believe the most of them arise either on the construction of wills, or deeds of trust. We can not safely apply, without much care, the rule of construction applicable to wills to the construction of deeds of conveyance. In construing wills the intention of the testator is the sole guide, and words must be held to mean what he intended they should mean, if it can be done without a clear perversion of their known and plain import. The intention of the devisee is not to be considered; he has no right to make terms with the devisor. Besides, a will can be made, altered by codicil or revoked, at the pleasure of the devisor. Not so with a deed of conveyance. To it there must be two parties, each having a right in settling its terms, and in its construction the intention of both parties must be considered. It can not

be altered or abrogated by either party, but only by the act of both. This difference between the rules of construction, which govern these two classes of instruments, is plainly founded in reason and justice. And in the construction of deeds of trust, the express trusts will always govern the words in the *habendum.* Not so in a deed of conveyance, merely, between the vendor and vendee. In such cases, the distinction between words of limitations and words of purchase must be preserved, and the rights of the parties maintained accordingly. For these reasons, we think that many of the cases cited by the appellees are not good authority, as applicable to the case we are considering.

The deed from Robson & Voorhees conveys the estate "to Martha W. Rea and her children and their heirs and assigns forever." It will be observed, upon its face, that it neither limits an estate for life, nor in remainder, nor expresses a trust. It is therefore nothing more than a deed of conveyance of lands, between the vendors and the vendees, or such of them as can take. The evidence shows us that Richard Gatling Rea was a child, about two years old, at the time the deed was executed. The date of the deed is in April, 1855, and the date of the acknowledgment in December, 1855. Margaret Augusta Rea was born in August, 1855; she was *in ventre sa mere* when the deed was made, but was a person in being, and therefore could take. The remaining children of Martha W. Rea were begotten and born after the execution of the deed. The conveyance, as remarked, neither limiting an estate for life, nor in remainder, nor an express trust, a vendee not in being can not take. In a trust deed, when there is a trustee to preserve the title, unborn children may be provided for. And so in contingent remainders, where they vest before, or at the time, the particular estate ends; but a mere vendee not in being can not take. A person who does not exist, and may never exist, can not take a title to lands; indeed, the proposition is a solecism.

We are of opinion, therefore, that the deed of Robson & Voorhees conveyed an estate in fee-simple, in the land described, to Martha W. Rea, Richard Gatling Rea and Margaret Augusta Rea, as tenants in common, and that the children of Martha, subsequently begotten and born, took nothing thereby.

Coke lays down this rule: " B. having divers sonnes and daughters, A. giveth lands to B. *et liberis suis, et a lour heires,* the father and and all his children do take a fee-simple joyntly by force of these words (their heirs); but if he had no childe at the time of the feoffment, the childe born afterwards shall not take." Co. Lit. 9 a.

*Stephens Case,* in C. B. 30 Eliz.: "In an ejectment, the case was, Sir William Beale made a lease by indenture to William Pile and Philip his wife, *et primogenito proli habendum* to them and the longer liver of them successively, during their lives, and then the husband and wife had issue, a daughter. And it was holden by three of the justices, that the daughter had no estate, for that she was not *in esse,* at the time of the grant." Owen, 152.

*Stevens* v. *Lawton* : " *Ejectione Firmæ.* Upon special verdict the case was, Sampson Bell let land to W., his son, and P., his wife, *et eorum primogenitæ proli successive;* they had then no issue, but afterwards they had issue: the question was, If after the death of W. and P. the issue shall take by way of remainder or otherwise?—and THE COURT held, he shall take nothing, for he was not *in esse* at the time of the grant, and by the grant he is to take jointly: and so it was adjudged." 1 Cro. Eliz. 121.

*Frederick* v. *Frederick.* " Partition. The case was upon special verdict. 'A. levies a fine to J. S. which by indenture is declared to be to the use of B., for life, and after to the use of the children of C. *procreatis:* C., at the time of the limitation, had two sons, and before the death of B. had issue, two daughters.' The question was, If the daughters should take? After argument at the bar, it

was resolved by THE COURT, (except OWEN) that the daughters should not take." 1 Cro. Eliz. 334.

And in *Wild's Case*, which arose upon a devise, the bequeathing words of which were, " To ' Rowland Wild and his wife, and after their decease to their children,' " it was " resolved for good law, that if A. devises his lands to B. and to his children or issues, and he hath not any issue at the time of the devise, that the same is an estate-tail; for the intent of the devisor is manifest and certain that his children or issues should take, and as immediate devisees they can not take, because they are not *in rerum natura*, and by way of remainder they can not take, for that was not his intent, for the gift was immediate," etc. 6 Co. 17.

These authorities, we think, fully support our views upon this question, and we have no knowledge of any modern cases which conflict with their rulings.

The question raised by the assignment of cross-errors, yet remaining to be decided, is : Are Sampson Rea and Martha W. Rea estopped, by their deed to Mary E. Noble, from setting up title, in the lands they conveyed, to the share which they subsequently inherited from Richard G. Rea ?

That Sampson Rea, who was not under any disability, and is bound by his covenant of warranty, is so estopped, we believe is not disputed; but whether Martha W. Rea, being under the disability of coverture, and not bound by her covenants of warranty, is so estopped, presents a more difficult question. The deed of Sampson Rea and Martha W. Rea, under section 6, 1 R. S. 1876, p. 363, undoubtedly passed all the title Martha had in the lands at the time of the conveyance to Mary E. Noble, and as to that, although she is not bound by her covenants of warranty, we think she is estopped by her deed. The statute which enables her thus to convey, during coverture, the lands held in her own right, imposes upon her, as a corollary, all the

obligations of the conveyance, save those which the statute itself excepts—for it would be an absurdity to say that she had passed her lands if she could take them back again; and the estoppel does not depend upon the obligation of the covenant of warranty, although the books sometimes loosely say so; it depends on good faith, right conscience, fair dealing and sound justice. When a person, competent to act, has solemnly made a deed, he shall not be allowed to gainsay it to the injury of. those whom he has misled thereby. *Fowler* v. *Shearer*, 7 Mass. 14; *Massie* v. *Sebastian*, 4 Bibb, 433; *Wadleigh* v. *Glines*, 6 N. H. 17; *Grout* v. *Townsend*, 2 Hill, N. Y. 554; *Fletcher* v. *Coleman*, 2 Head, 384; *Graham* v. *Meek*, 1 Or. 325; *VanRensselaer* v. *Kearney*, 11 How. U. S. 297.

In the case of *Nicholson* v. *Caress*, 45 Ind. 479, it would seem, by a head-note, that a married woman is not estopped by her deed, in which there are no covenants which can bind her; but upon examining the case it will be found that the deed under consideration was merely a quitclaim; the court remarking, BUSKIRK, J., "If such is the case the deed would not operate to pass an after-acquired title." This language strongly implies that if the deed purported to convey the entire estate in the land it would operate to pass an after-acquired title. And this case is fully supported by *Shumaker* v. *Johnson*, 35 Ind. 33, wherein this court, WORDEN, J., delivering the opinion, strongly intimates that a married woman will be estopped by her deed, even against an after-acquired title. See, also, *Scranton* v. *Stewart*, 52 Ind. 68. In *Hill's Lessee* v. *West*, 8 Ohio, 222, it is distinctly held, that a married woman, when she joins her husband in a conveyance with covenants of warranty, though she is not bound by such covenants, yet she is estopped from setting up a subsequently acquired title in the same lands. The only case we can find in opposition to this rule, is *Jackson* v. *Vanderheyden*, 17 Johns. 167; and the reason given there is, that the *feme covert* was not bound by the covenants in

the deed; but, as we have seen, this is not the only ground of estoppel.

By the statute of Gloucester, 6 Edw. I, c. 7, a dowager could not alien the land assigned to her as dower, without forfeiture; but at common law a wife could be barred of her dower by levying a fine, or suffering a recovery of the lands, during coverture. By the statute 27 Hen. VIII., c. 10, she was barred by accepting a jointure instead of dower. It was never doubted, we believe, but that, if the wife levied a fine, or suffered a recovery, or accepted a jointure, she was estopped from claiming dower. 2 Bl. Com. 136.

In this State, before dower was abolished, a wife could, by statute, bar herself of dower by joining with her husband in a conveyance or mortgage of the lands, and thus became estopped by her deed. It seems to us that the present statute, enabling a wife to pass the lands which she holds in her own right, by joining with her husband in the conveyance, is not less authoritative than the former statute, which enabled her to bar her dower in the same way. There is no difference between the cases, except that in one an immediate estate passes, while in the other the estate is inchoate, and to be enjoyed in the future.

And we think it may be held, as settled law in this State, that a married woman may be estopped by matter *in pais*, from setting up title to lands. *Scranton* v. *Stewart*, 52 Ind. 68, and authorities there cited. If so, we do not clearly perceive why she should not be estopped by her deed.

Upon principle, by reason and authority, we are thus guided to the conclusion, that, when a married woman joins with her husband in a conveyance of lands held in her own right, which purports to convey the entire estate therein, she is estopped from afterwards setting up any title to the lands so conveyed, whether it existed at the time of making the conveyance, or was subsequently ac-

quired. Upon this point the court below committed no error, and the appellees, upon their cross-error, have shown us no error of which they can complain. And it seems, by the decree, that the court gave the proper construction to the deed made by Robson & Voorhees "to Martha W. Rea, and her children, and their heirs and assigns forever;" but, in holding that the deed from Andrew Wallace, conveying the land "to Martha W. Rea, during her life, in remainder to the issue of her body, their heirs and assigns forever," conveyed only an estate for life to Martha, we think the court erred; and for this error the judgment must be reversed.

The judgment is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.

Petition for a rehearing overruled.