McIlhinny v. McIlhinny.

No. 16,753.

McIlhinny v. McIlhinny.

CONVEYANCE.—*Rule in Shelley's Case.*—*The Word "Issue."*—*Real Estate.* —*Cases Modified and Overruled.*—Where "William Merrill and Annie Merrill, his wife, * * convey and warrant to Annie Merrill, Junior, * * for and during her life, with remainder over to the issue of her body born alive [Annie Merrill, Junior, at the time of the conveyance, being unmarried and without issue], but in the event of the said Annie Merrill, Junior, dying without issue of her body born alive, then with remainder over to John Merrill * *," such conveyance does not come within the rule in Shelley's case, the word "issue" being a word of purchase and not of limitation. *King* v. *Rea*, 56 Ind. 1, modified; and *Fletcher* v. *Fletcher*, 88 Ind. 418, overruled.

SAME.—*Life Estate.*—*Contingent Remainder.*—*Vested Remainder.*—In such conveyance, Annie Merrill took a life estate on which a contingent remainder to the issue of her body born alive, was limited, and on which, also, was limited to John Merrill a remainder contingent on "issue" not being born alive of the body of Annie Merrill, Junior. Upon "issue" of Annie Merrill's body being born alive, the contingent remainder as to such issue became a vested remainder by such birth; and the contingency (the failure of issue of Annie Merrill's body born alive) on which John Merrill's interest depended having ceased, he has, and can have, no further interest in said land.

SAME.—*Vested Remainder.*—*Opening up to Let in Others.*—Under such conveyance, the remainder limited to the "issue" of Annie Merrill's body born alive became vested in such "issue" by the birth, subject to be opened up to let in those afterward born alive of Annie Merrill's body, before the termination of her life estate.

From the Fayette Circuit Court.

*G. C. Florea* and *L. L. Broaddus*, for appellant.

*R. Conner* and *H. L. Frost*, for appellee.

McCABE, J.—Suit by appellee to quiet title against appellant.

The overruling of appellant's exceptions to the conclusions of law stated on a special finding by the court is assigned here for error.

The substance of the special finding is that on the 21st day of December, 1881, one William Merrill, the father of appellee, was the owner in fee simple and in possession of the real estate described in the complaint, which was sixty-five acres of land; that on said day, while he was such owner, he and his wife executed to his daughter, Annie Merrill, then aged 14 years, a deed for said real estate, reading as follows:

"This indenture witnesseth that we, William Merrill and Annie Merrill his wife, of Fayette county, in the State of Indiana, convey and warrant to Annie Merrill, Junior, of Fayette county, Indiana, for and during her life, with remainder over to the issue of her body born alive, but in the event of the said Annie Merrill, Junior, dying without issue of her body born alive, then with remainder over to John Merrill for and in consideration of the sum of eight thousand dollars as an advancement made to the said Annie Merrill, Junior, by the said William Merrill in his estate the following real estate in Fayette county, in the State of Indiana, to wit: [then follows a description of the land].

"In witness whereof the said William Merrill and Annie Merrill, his wife, have hereunto set their hands and seals, this 21st day of December, A. D. 1881.

"WILLIAM MERRILL.

"ANNIE MERRILL."

That the execution of said deed was duly acknowledged before the proper officer on the same day by the grantors; that the plaintiff, Anna C. McIlhinny, is the same person named in said deed as Annie Merrill, Junior; that at the time of said deed the plaintiff was an unmarried daughter of said William Merrill and did not have born to her any children until the 27th day of July, 1890; on that day Jennie L. McIlhinny was born to the plaintiff, she being the plaintiff's first and only child, and is now

living; that after the execution of the deed the appellee took possession of the premises conveyed; that the defendant, John Merrill, is the John Merrill mentioned in the deed; that John Payne is now, and was before the beginning of the suit, the legal and qualified guardian of said Jennie L. McIlhinny; that the appellee has not parted with the title to said real estate conveyed to her by said deed, but is still the owner of whatever title said deed conveyed to her; that John Merrill and John Payne, appellant's guardian, both claimed, prior to bringing the suit, that the appellee was not the owner in fee simple, and that they had some interest in the land; that said claims cast a cloud upon the title of appellee in fee simple.

The conclusions of law are "that appellee, Annie C. McIlhinny, was, at the beginning of the suit, and is now, the owner in fee simple of the real estate described in the complaint, setting out the description by metes and bounds; and that said John Merrill and Jennie L. McIlhinny have no interest in said real estate."

It is contended by the appellee's counsel that the rule in Shelley's case applies to the deed, and that by that rule a title in fee simple vested in the first taker by virtue of the deed. The appellant's counsel contend that the rule in Shelley's case does not apply, and, if that rule does not apply, the plainly expressed intention of the grantor was to vest a life estate in the appellee with remainder over in fee to the issue of her body born alive.

It is not denied by the appellee's counsel, that such was the apparent and plainly expressed intent of the grantor, but invoking the aid of the rule in Shelley's case, and quoting from Chancellor Kent they say: "And yet it (the rule in Shelley's case) is admitted to interfere, in most cases, with the presumed, and in many others with

the declared intention of the parties to the instrument to which it is applied.''

They, therefore, conclude if the deed in question falls within the rule in Shelley's case the question of intention is foreign to the discussion in this case.

The rule in Shelley's case is this: ''Where a freehold is limited to one for life, and by the same instrument the inheritance is limited, either mediately or immediately, to heirs, or heirs of his body, the first taker takes the whole estate, either in fee simple or fee tail; and the words 'heirs,' or 'heirs of the body,' are words of limitation, and not of purchase.'' *Andrews* v. *Spurlin*, 35 Ind. 262.

In *Ridgeway* v. *Lanphear*, 99 Ind. 251 (253), this court said: ''The rule in Shelley's case, 1 Coke, 88, is the law of this State, and, in all cases where the facts make it applicable, we must enforce it, although we may think there was not much reason for it at the time of its adoption, and none at all under the existing system of tenures and conveyances. But, in accepting the rule, we take it as construed and enforced by the courts which formulated and proclaimed it. Pressed by the evils wrought by the rule, and shocked by the great number of instances in which it operated to utterly overthrow the intention of the testator, these courts, centuries ago, affirmed that there existed an important difference between wills and deeds, and that the rule should not be so strictly enforced in the case of a will as in the case of a deed. It has long stood as the law that there is a material distinction between wills and deeds, and that the rule in Shelley's case will not be allowed to override the manifest and clearly expressed intention of the testator, but that the intention will always be carried into effect if it can be ascertained. It is true that where the words used are such as to bring the case within the rule, it will

be given full force and effect, but where the context clearly shows that the testator annexed a different meaning, that meaning will be adopted, and the rule will not be allowed to frustrate his intention."

But the appellee insists that *King* v. *Rea,* 56 Ind. 1, is parallel to, and directly supports, the conclusions of law stated by the trial court in the case at bar. It must be confessed that if that case was correctly decided, the judgment in this case must be affirmed. One of the deeds involved in that case, executed by Andrew Wallace, read: "Conveys and warrants to Martha W. Rea, during her life, in remainder to the issue of her body, their heirs and assigns forever." The court held that Martha W. Rea, by the deed from Andrew Wallace, took a fee simple in the lands, and that the words "issue of her body" must be held as words of limitation, and not words of purchase.

It was held in *Gonzales* v. *Barton,* 45 Ind. 295, DOWNEY, C. J., delivering the opinion of the court, that the words "lawful issue" were words of limitation, and not words of purchase. This court, in following that case, lost sight of the fact that that case was one involving the construction of a will, and the distinction between the force of the word "issue" when used in a deed and when used in a will. It has long been established law that when used in a will the word "issue" may be a word of purchase or it may be a word of limitation, depending on the testator's intention as expressed in the context. But when used in a deed it is always a word of purchase. Elphinstone's Int. of Deeds, 318, 319; *Bagshaw* v. *Spencer,* 2 Atk. 586; *Doe* v. *Collis,* 4 T. R. (D. & E.) 294; *Rowle's Case,* 11 R. 79 b; 11 Am. and Eng. Encyc. of Law, 876, 877 and authorities there cited; 2 Wash. Real Prop. (5th Ed.), top page 654, 655.

It is also held in *Nelson* v. *Davis,* 35 Ind. 478, and in

*Shimer* v. *Mann,* 99 Ind. 190, that the word "issue" is very frequently a word of purchase. It was properly enough held in *Gonzales* v. *Barton, supra,* that the word "issue" in the will involved in that case, under the context therein, was a word of limitation, and not a word of purchase. Quite a large number of English cases are therein cited to support that construction of the word, but they are all will cases. It is quite natural that in the light of all those cases construing the word "issue" to be a word of limitation, and not a word of purchase, the distinction between the force and effect of the word when used in a will and when used in a deed should escape the notice of the court in citing *Gonzales* v. *Barton, supra,* in support of the ruling in *King* v. *Rea, supra,* and therefore this court felt constrained to say "this case must be followed."

The legitimate offspring and fruit borne by *King* v. *Rea, supra,* is *Fletcher* v. *Fletcher,* 88 Ind. 418, which is also cited and relied upon by the appellee here.

In that case, Stoughton J. Fletcher and Allen M. Fletcher sued their minor children to quiet title to real estate, showing that at the date of the execution of the deed they were unmarried, and neither of them ever had any children born unto them, but that since the execution of said deed, both of them had become married and had children born unto them, who are still living, naming them as defendants.

The deed was by Stoughton A. Fletcher and wife, who "'convey and warrant to Stoughton J. and Allen M. Fletcher, during their lives, one undivided moiety each, and then, after their death, to their children respectively, in fee simple, for the sum of $39,000, the following real estate in Marion county, in the State of Indiana.'" Then follows a description of the land.

McIlhinny *v.* McIlhinny.

" 'In witness whereof, the said Stoughton A. Fletcher and Julia A. Fletcher, his wife, have hereunto set their hands and seals, this 30th day of December, A. D. 1873.

S. A. FLETCHER.

JULIA A. FLETCHER.' "

The foregoing deed is such as, at common law, would be a conditional fee, and was called a fee tail or estate tail, the quality of which is defined to be that it is liable to be defeated by the failure of the contingency or condition on which it is made to depend; and, in that event, at common law, it reverted to the donor. 1 Wash. Real Prop. (5th ed.), 106 and 107, and authorities there cited; 6 Am. and Eng. Encyc. of Law, 879, and authorities there cited.

By our statute (2 Burns' R. S. 1894, section 3378), "Estates tail are abolished; and any estate which, according to the common law, would be adjudged a fee-tail, shall hereafter be adjudged a fee-simple; and if no valid remainder shall be limited thereon, shall be a fee-simple absolute."

Now, as the contingency of the grantees in the foregoing deed, leaving children surviving, might never have happened, the estate was a conditional one, and, at common law, would have been a fee tail or estate tail, and but for the latter clause of the above quoted statute abolishing such estates it would be a fee simple absolute in the first takers, and their children would have taken nothing.

The question then arises, was there a valid remainder limited thereon? If there was, then the first takers did not take a fee simple absolute, unless the rule in Shelley's case applies.

Section 3380, of the same statute, provides that "A remainder may be limited on a contingency, which, in

McIlhinny *v.* McIlhinny.

case it should happen, will operate to abridge or determine the precedent estate.''

Accordingly, it has been held by this court, and so ruled at common law, that a valid remainder might be limited on a particular estate for life, to unborn children, and, on their birth during the life tenancy, the remainder would immediately vest. The remainder is contingent before, and vested after, the birth of the remainderman. *Amos* v. *Amos,* 117 Ind. 19; *Amos* v. *Amos,* 117 Ind. 37; 20 Am. and Eng. Encyc. of Law, 854, 855; 2 Wash. Real Prop. (5th ed.), 610, 611; *Glass* v. *Glass,* 71 Ind. 392.

It follows that the deed in the Fletcher case limited a valid remainder upon the particular estate granted, and the children to whom it was limited being unborn it was a contingent remainder until their birth, when it became vested unless this manifest intent was defeated by the operation of the rule in Shelley's case. That rule is cited along with *King* v. *Rea, supra,* as authority for the conclusion reached.

That the rule in Shelley's case has no application to that case is too plain for argument. The word ''children,'' used in the deed, has always been held in this court and the courts of England as a word of purchase and not a word of limitation. *Sorden* v. *Gatewood,* 1 Ind. 107; *Doe on Demise* v. *Jackman,* 5 Ind. 283; 3 Am. and Eng. Encyc. of Law, 229, 230, 231, 232, 233, and authorities there cited.

The result is, if we follow the two cases of *King* v. *Rea, supra,* and *Fletcher* v. *Fletcher, supra,* we shall extend the rule in Shelley's case farther in this State than it was ever extended in England or in this country, so far as we have been able to discover.

While it is a rule of law too firmly established to be shaken by the courts, and which the courts should en-

force, not because it is just or wholesome, but because it is law, yet its operation more frequently defeats the just and undoubted intention of grantors and testators than any other effect it has. For this reason the courts everywhere are inclined to circumscribe its operation within the strict limits of its own boundaries.

It follows from what we have said that there was no word of limitation used in the deed to the appellee, but that the word "issue" used therein being a word of purchase the rule in Shelley's case does not apply; therefore, we are left free to give effect to the manifest intent of the grantor therein, William Merrill. That intention is very clearly expressed to create a life estate in his daughter, the appellee here, with remainder over to the issue of her body born alive, but, in the event of her dying without such issue born alive, then with remainder over to John Merrill. Such a deed, as we have seen, would have conveyed what is known at common law as a conditional estate or fee, called an estate tail liable to be defeated by the failure of the condition, namely, issue of her body born alive, and failure of the contingent remainderman, John Merrill, to be living at the termination of her life estate. In such case, at common law, the estate would revert, as we have seen, to the donor. But our statute, as we have seen, changes that feature of the estate and makes it a fee simple in the first taker, the appellant, unless there was a valid remainder over limited to the issue of her body or, on failure of such issue, to John Merrill.

As we have already seen, the remainder limited was a valid one, both under the statute and at the common law. It was contingent at the date of the deed and became vested by the birth of the appellant as issue of appellee's body born alive. Having become vested in appellant, the contingency on which John Merrill's inter-

est depended, his contingent interest has ceased, and he has, and can have, no further interest. 2 Wash. Real Prop. 629; 20 Am. and Eng. Encyc. of Law, 850, and authorities there cited.

The remainder vested in appellant on her birth, subject to be opened up to let in those afterwards born alive, or issue of appellee's body, before the termination of her life estate. 20 Am. and Eng. Encyc. of Law, 855, and authorities there cited.

In so far as *King* v. *Rea, supra*, is inconsistent with this opinion, it is modified, and *Fletcher* v. *Fletcher, supra*, in so far as it conflicts with this opinion is overruled.

It is but just to the learned judge of the trial court, to say that he was under legal compulsion to follow the cases just referred to so long as they stood unmodified and not overruled by this court. Hence, he was fully justified in holding, in line with those cases, that the rule in Shelley's case applied, and that the appellee took a fee simple.

We are of opinion that the trial court erred in its conclusions of law.

The judgment is reversed and the cause remanded, with instructions to the trial court to restate its conclusions of law in accordance with this opinion.

Filed April 18, 1894.