23  25
126  90

23  25
131  383

## HULL and Another *v.* BEALS and Others.

RULE IN SHELLEY'S CASE.—Where lands are granted to one and his heirs, or to one for life and remainder to his heirs in fee, the grantee of the particular estate takes the whole estate.

SAME.—The intention of the grantor has been suffered to control where explanatory words have been added.

SAME.—*Hull* and wife conveyed a tract of land to "*Frances Beals* and her heirs forever" It was "expressly stipulated and understood that the deed was made with the condition that *William* and *Frances Beals* take a life estate in the premises with remainder to the heirs of *Frances;* and, further, that *Cora,* infant daughter of said *William* and *Cynthia,* his former wife, be considered from this time forward as one of the heirs of said *Frances;* and if she survives said *Frances,* or shall leave issue, then, at the death of said *Frances,* she shall inherit as one of her own heirs, born in lawful wedlock." *Beals* and wife afterward quitclaimed to *Hull.* Suit by *Hull* and wife to quiet title.

*Held,* that whatever estate passed out of *Hull* and wife was transmitted no further than to *Beals* and wife, and upon reconveyance by them was reinvested in plaintiffs.

APPEAL from *Ripley* Circuit Court.

HANNA, J.—This was an action in the nature of a bill in equity to quiet title, brought by *Hull* and wife against *Beals* and wife and one *Cora Beals.* It is shown in the pleadings that the wife of *Beals* was the daughter of plaintiffs, and *Cora,* their granddaughter, by their daughter *Cynthia,* a former wife of said *Beals.* There were separate demurrers to the complaint sustained, upon which arise the only points here presented. It is averred in the complaint that, being anxious to arrange their property justly and equitably among their children and grandchildren, the plaintiffs, on the 5th of *April,* 1861, executed their certain deed with conditions, which is made a part, etc., to said *William J. Beals* and wife, and took from them at the same time a bond and lease, which are made parts, etc.; that said *Cora* is a minor, and living with said *Beals* and wife who resided upon said tract of land until *March* 1, 1862, when they abandoned and gave up the same, and on the 26th of said month, for the purpose of rescinding said

contract, executed a quitclaim deed for said premises to
the plaintiffs, which is made a part, etc., and at the same
time delivered up the original deed for cancellation, and
gave notice that they would not pay the sum secured by
said bond to be annually paid said plaintiffs; that after-
ward, being in possession of said premises, plaintiffs re-
ceived from said *Beals* a notice, made a part, etc., and said
*Beals* gave out in speeches that said quitclaim did not re-
lease a remainder in fee, supposed to be conveyed to said
*Cora* by said deed of *April* 1, and that said *Cora* claims to
own and be entitled to enforce said remainder in fee; that
said instruments are but one contract, and said *Cora* ac-
quired no right or interest except through said contract,
and by the cancellation thereof by said *Beals* and wife, any
right said *Cora* would have had at the death of *Beals* and
wife was extinguished.

It appears that the court sustained the demurrers on the
ground that by the acts of the parties the whole contract,
etc., was rendered of no further binding force; that there
was no cloud upon the title of the plaintiffs, and, as they
were in possession, nothing to quiet.

But it is urged that the deed gave a life interest in the
lands to *Beals* and wife, and remainder in fee to the heirs
of said wife, of whom said *Cora* was by the said deed made
one; that the quitclaim of said lands by *Beals* and wife,
back to said original grantors, did not of itself divest said
remainder, and as their failure to comply with the condi-
tions annexed to the deed does not appear by said quitclaim
and redelivery of possession of deed and premises alone,
it was necessary for the court to make a decree quieting
the title.

The deed was in the usual form, conveying to " *Frances
Beals* and her heirs forever " the lands described.   It is
then " expressly stipulated and understood by the grantors
and grantees, that this deed is made with this condition,
that the said *William* and *Frances Beals* take a life estate
in the above described premises, with remainder to the heirs

of the said *Frances,* and with the further express stipulation that *Cora Ann Beals,* infant daughter of said *William* and *Cynthia,* his former wife, shall be considered from this time forward as one of the heirs of said *Frances,* and if she survives the said *Frances,* or shall leave issue, then at the death of the said *Frances* she shall inherit as one of her own heirs, born in lawful wedlock." Covenants of seizure and against incumbrances, and warranty to *Beals* and wife.

There was a mortgage by *Beals* and wife of said lands to the grantors thereof, to secure the payment and performance of a bond then made by them to said grantors. The bond was in the sum of $2,500, and recited the deed aforesaid as being a general warranty to *Beals* and wife of a life estate in, etc., and remainder to the heirs of said *Frances,* and provided the payment, on the first of *April,* annually, to said *Hull,* or if he should die then to said *Mary,* his wife, of the sum of $120, "for and during the natural lives of the said *John Hull* and *Mary Hull,* or to the survivors," and that, upon compliance, said bond should be void, but if installments were not paid, then said $2,500 to become due and payable.

The lease was for the natural life of said *Hull* and his wife to certain parts of said premises. The quitclaim deed was from *Beals* and wife, and expressed that, for the consideration, etc., being the same amount stated in the original deed, they "remise, release, and forever quitclaim unto the said *John Hull,* his heirs and assigns forever, all our right, title, interest, and estate legal equitable in and to," etc. The premises are described, and it is stated that it is "the same tract of land deeded to *William Beals* and *Frances Beals* by *John Hull* and *Mary Hull,* April 5, 1861. Then the notice is as follows:

"*Mr. John Hull*—Sir: You are hereby notified not to touch, move, or cause to be moved my wood, manure, or straw, or any thing which belongs to me on the place that I

quitclaimed to you, for I want the same for the benefit of the farm; and you are further notified not to cut, or cause to be cut, any green timber outside of the dwelling land.

" *September* 21, 1861.                    W. G. BEALS."

The question is, ·whether, under these circumstances, the full title was reinvested?

It has been held, that what is called the rule in *Shelley's* case, is a law of property in *Indiana; Doe* v. *Jackman,* 5 Ind. 284; *Small* v. *Howland,* 14 *Id.* 592; though, perhaps, not enforced with the same strictness as in *England,* where it has been maintained for five hundred years. 5 *Id., supra; Sorden* v. *Gatewood, Id.,* vol. 1, p. 107; 4 Kent's Com. ·206, Lect. 58; 2 Bouv. L. Dict. and auth.; Blackst., 2d B., p. 242; *Smith* v. *Chapman,* 1 Hen. & Munf. 240; *Brandt* v. *Gelston,* 2 Johns. 384; *Bishop* v. *Sellock,* 1 Day, 299; *Dott* v. *Cunnington,* 1 Bay. 453; *Ib.* 457; *Shermer* v. *Shermer,* 1 Wash. 267; 2 *Id.* 9; *Carr* v. *Porter,* 1 McCord's Ch. Rep. 60; 2 Gr. Cr. on Real Prop. 380.

Therefore, where lands are granted to one and his heirs, or to one for life and remainder to his ·heirs, in fee, under the operation of this rule, he to whom the particular estate is thus granted takes the whole estate. Nevertheless, even in *England* and perhaps to a greater degree in this country, the intention of the grantor has been suffered to control in instances where explanatory words have been added. See Kent, *supra,* and 222, and authorities cited. *Doe* v. *Jackman, Supra.*

In the case at bar, two things are manifest: 1. That *Frances* and *William Beals* should take but a life estate. 2. That *Cora,* the granddaughter, should take a fee-simple interest in said property at the expiration of the particular estate upon which the remainder was made to rest; and that she should take as if she were a child of said *Frances.* Whether the word heirs, in the connection in which it is used, means children of said *Frances,* we need not inquire. But it is evident that the grantors in-

tended, at least so far as the granddaughter *Cora* was interested, to create a stock or root of an inheritance beyond *Beals* and wife. We were at first inclined to the opinion that such persons will hold then, if at all, by purchase and not by inheritance from said *Frances*. If this view had been correct, then it would seem to follow that those to whom the particular estate was granted could convey no more than their life interest. If they had conveyed that interest to a stranger, of course he would have received it subject to any incumbrance thereon. In this instance that incumbrance, it is insisted, was the payment of a stipulated sum per annum. But here the conveyance was to the immediate grantors from whom title had been derived, and to whom the sum reserved was to be paid; and the question would then arise, whether each conveyance operated as a forfeiture or extinguishment of the remainder, or only operated as a reconveyance of the life estate, and if the latter, whether the last grantors took it subject to the incumbrance named; or whether it is a charge upon the land, or those who may receive the fee-simple.

Perhaps it might be assumed that, as the provision for the payment of a certain sum per annum was not inserted in the deed, but was secured by separate instruments, namely, the personal bond of *Beals* and wife in a named sum, to-wit, $2500, and a mortgage upon the real estate granted; therefore the payment of such sum was not a condition subsequent upon which the said parties held said land.

It may be possible that events might so transpire as that the object which was perhaps intended to be secured would not be accomplished if this construction is maintained. The intention was doubtless to grant to *Beals* and wife a life-interest in said lands, remainder over in fee to the heirs of said *Frances*, of whom *Cora* should be considered one, and that as long as the grantors lived they should be paid annually $125. If *Beals* and wife should die before

the said *Hull* and wife, leaving no property to said *Cora*, and she should take this land—not through them, but directly, as is said in law, by purchase from *Hull* and wife— then, unless the payment thereof could be considered as a charge upon the land, it might for the want of funds of *Beals* and wife be defeated. We do not think that it is clear that the instruments shown make the sum reserved a charge upon the land conveyed. It is true, to secure the personal bond, a mortgage was taken on said lands; but the estate mortgaged could be no greater than that held by the mortgagors, and as it ends with their lives, it would be of no value as a security in the case supposed. But this is a consideration that can have no influence in the determination of the legal questions involved, except in the construction of the deed with reference to the estate granted to *Beals* and wife.

Then what was the effect of the deed of those holding the particular estate to their grantors, the persons who created that estate? Without doubt, it reconveyed to them that estate. But how did it affect the remainder over to the heirs of the said *Frances?*

It is a settled doctrine of the common law that an estate in fee can not be granted to commence in the future. *Hull* and wife could not, therefore, have conveyed by deed to the heirs of *Frances*, she being alive, said lands, because while she lives she has no heirs, and the estate would necessarily have to commence in the future. But a particular estate, as a life-interest to said *Frances*, could be created for said future estate in fee to rest upon. Could that particular estate be thus carried out, and then immediately reconveyed to the grantor, and yet the conveyance of the fee to commence in the future remain in force? Under the common law the grantor could not reserve to himself a particular estate, and convey the fee to commence at the ending of said first-named estate, because livery of seizin, or delivery of possession of the lands conveyed, formed a part of the act of conveyance; and as

Hull and Another *v.* Beals and Others.

such conveyance of a fee and delivery of possession carried with it the whole estate so far as the grantor was concerned, it would be a contradiction to suppose that he could retain any part of the whole that he had thus granted. It is true, he might divide that estate by conveying, as before said, a part, as a life estate, to one, and the balance to another by the same instrument. These reflections arose upon our first impressions as to the effect of the deed; namely, that it vested in a person named, to-wit, *Cora,* a remainder in fee; and under this view it would have required the decision of what to us appears as a somewhat novel and curious question. But a more strict analysis of the language of the deed leads us to the conclusion that it provided for a contingent remainder, which might redound to the benefit of said *Cora,* but did not vest in her that remainder. Now, although the remainder, so far as the record shows, was fixed as to one of the persons who was to receive it, to-wit, *Cora,* yet the event upon which it depends is uncertain in this, "that if she survive said *Frances,* or shall leave issue, then at the death of said *Frances* she shall inherit as one of her own heirs, born in lawful wedlock." Whether she shall survive said *Frances,* and if not, whether she shall leave issue, are both uncertain events. This being so, the remainder limited is contingent upon those events; of course, as it is not shown that said *Frances* was dead, but to the reverse, the contingency may not happen by which, at the expiration of the particular estate, the remainder might vest in said *Cora,* because she may die without issue before said *Frances.* If this should happen, the remainder is gone. 2 Blackst. Com. 169–171; 4 Kent. Com. 208. It follows that whatever estate passed out of *Hull* and wife was transmitted no further than to *Beals* and wife; and, as they retransferred, it was reinvested in the plaintiffs, and, as a consequence, they have no cause of action.

*Per Curiam.*—Judgment affirmed.

*John K. Thompson,* for appellant.