Andrews *v.* Spurlin and Others.

*A. G. Porter, B. Harrison,* and *W. P. Fishback,* for appellants.

*B. E. Rhoads, M. G. Rhoads, J. M. Allen,* and *W. Mack,* for appellees.

———◆———

## Andrews *v.* Spurlin and Others.

REAL ESTATE.—*Rule in Shelley's Case.*—The rule in Shelley's case is the law and a rule of property in this State.

ALIENATION OF REAL ESTATE.—*Restriction of*—A grantor of real estate may limit or restrict the power of alienation for a period of time, but an absolute prohibition is void.

SAME.—*Deed.*—*Construction.*—The language of a deed was as follows, "A. and B. his wife, convey and warrant to C. her lifetime, and after her death to descend to the heirs of her body," certain real estate. "The said C., in consideration of this deed, receipts and forever quitclaims to any further interest in and to her father's real estate whatever, and that a transfer of said real estate by C. shall in no wise be valid."

*Held,* that the deed conveyed a fee simple absolute to the grantee.

*Held,* also, that the grantee possessed the right of alienation, and that an alienation by her completely cut off all her heirs.

APPEAL from the Bartholomew Circuit Court.

BUSKIRK, J.—This is an action in ejectment instituted by the appellees against the appellant for the possession of the north-west quarter of the north-west quarter of section 11, township 10, north of range 6 east, situate in Bartholomew county, Indiana. Appellees claim that they are the heirs of Mary Wood, and that as such heirs they are entitled to the land which was conveyed to her by two deeds from Jeffrey Cox and Nancy Cox. That under those deeds she held a life estate only, and she having departed this life, the land in controversy vested in them as her heirs. That Mary Wood could not make a fee simple title for said land, and that the deed of conveyance made by her in fee simple is void. On the contrary, the appellant contends that said deeds vest said estate in fee simple in Mary Wood; that said deeds did not vest said heirs of Mary Wood with an interest in said land as purchasers, but the rule in Shelley's case vested her with title, and that she could make a good and perfect title to the land; that Mary Wood and her husband, for the full value of said land, in good faith, conveyed the same in fee simple on the 24th day of September, 1859, to one Henry Drake, who for full value conveyed in fee simple to one Campbell, on the 18th day of March, 1863, and Campbell, on the 18th day of March, 1863, conveyed to one Lawrence, and Lawrence, on the 13th day of December, 1864, conveyed in fee simple to Mary Markland, who subsequently married one Gates, and she and her said husband on the 20th day of July, 1868, conveyed all said land, in good faith, in fee simple, to appellant, for the sum of sixteen hundred dollars, the full value of said land, and by virtue thereof he claims the ownership of the same.

The question arises first as to the construction of the two deeds from Jeffrey Cox and Nancy Cox to Mary Wood. The only difference in the language of the deeds is, one conveys the west half of the north-west quarter of the north-west quarter of section 11, in township 10, north of range 6 east, and the other conveys the east half of the north-west

quarter of the north-west quarter of said section, township, and range.

The language of the deeds is as follows:

"Jeffrey Cox and Nancy Cox, his wife, of Bartholomew county, in the State of Indiana, convey and warrant to Mary Wood her lifetime, and after her death to descend to the heirs of her body, of Bartholomew county, in the State of Indiana, for the sum of four hundred dollars, the following real estate in Bartholomew county, in the State of Indiana to-wit:"

After describing the tract, then follows:

"The said Mary Wood, in consideration of this deed, receipts and forever quitclaims to any further interest in and to her father's real estate whatever, and that a transfer of said real estate by said Mary Wood shall in no wise be valid."

The deeds upon their face purport to convey to Mary Wood an estate for life, with remainder in fee to the heirs of her body. The appellees claim that this was the legal effect of such conveyances, and that as Mrs. Wood only had an estate for life, she could not convey any greater estate than she possessed, and that upon her death the title of her grantee terminated, and that they as the children and heirs of the said Mary Wood became the absolute owners in fee simple of the said real estate, and were entitled to the immediate possession thereof. If the above position is correct, then the judgment of the court below was right and should be affirmed.

But the appellant insists that said conveyances bring the case within the rule in Shelley's case; that the rule established in that case is recognized as the law and a rule of property in this State; that under that rule Mary Wood became the absolute owner in fee of said lands; and that her conveyance vested her grantee with an estate in fee. If the position assumed by the appellant is correct, then the court below erred in its finding and judgment, and the judgment must be reversed.

The rule in Shelley's case is recognized as the law and a rule of property in this State. *Doe* v. *Jackman*, 5 Ind. 283; *Small* v. *Howland*, 14 Ind. 592; *Hull* v. *Beals*, 23 Ind. 25; *Siceloff* v. *Redman's Adm'r*, 26 Ind. 251.

The rule in Shelley's case is this: "Where a freehold is limited to one for life, and by the same instrument the inheritance is limited, either mediately or immediately, to heirs or heirs of his body, the first taker takes the whole estate, either in fee simple or fee tail; and the words 'heirs' or 'heirs of the body,' are words of limitation, and not of purchase." *Doe* v. *Jackman*, 5 Ind. 283.

This rule is well defined by Preston, who says: "Where a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and afterwards, in the same deed, will, or writing, there is a limitation, by way of remainder, with or without the interposition of any other estate, of an interest of the same quality, as legal or equitable, to his heirs generally, or the heirs of his body, by that name in deeds or writings of conveyance, and by that or some such name in wills, and as a class or denomination of persons, to take in succession from generation to generation, the limitation to the heirs will entitle the person, or ancestor himself, to the estate or interest imparted by that limitation." Preston on Estates, 263.

This court, in *Doe* v. *Jackman*, *supra*, say: "This rule is, no doubt, a law of property in Indiana. Still it will not, in any case, be allowed to overrule the manifest intent of the testator, provided such intention be not unlawful or inconsistent with the rules of law. The rule is not designed to give meaning to words, but to fix the nature and quantity of an estate. Whenever, then, the matter becomes certain that the term heirs is used with an intent that they should take as purchasers, the instrument should be so construed. Indeed, there is no rule that can guide us safely through the numerous cases and apparent conflict of authorities on this subject, save that which looks to the intent of the testator."

It is a well settled rule of construction that the words

"heirs" or "heirs of the body" are to be construed as words of limitation and not of purchase; and that the words "child" or "children" are to be construed as words of purchase, and not of limitation.    See *Sorden* v. *Gatewood*, 1 Ind. 107; *Doe* v. *Jackman*, 5 Ind. 283.

Chancellor KENT states another rule of construction, in a case like this, thus: "There is more latitude of construction in the case of wills, in furtherance of the testator's intention, and the rule seems to have been considered as of more absolute control in its application to deeds."

By this rule the conveyance to Mary Wood for life, and to the heirs of her body, would, at common law, create an estate tail in Mary, but our statute having abolished estates tail, she took a fee simple absolute.   The remainder in the heirs of her body the law vested in Mary herself, so that both the estates were vested in the tenant for life.   The consequence of the application of this rule of construction to the deeds under consideration is, that Mary Wood, being vested with an estate in fee simple absolute, possessed an unlimited power of alienation, and the heirs of her body could not question the title of him to whom the estate was conveyed.

In *Brown* v. *Lyon*, 2 Seld. 419, the court say, "'Heirs of her body' being words of limitation and not of purchase, have no more power to prevent an alienation than the ordinary words in a conveyance to a man and his heirs have to prevent a conveyance by a tenant of the freehold, who is the grantee named in the conveyance."

There are some exceptions to this rule.   Chancellor KENT says, "Where the testator annexes words of explanation to the word *heirs,* as to the heirs of A. *now living,* showing thereby that he meant by the word heirs a mere *descriptio personarum,* or specific designation of certain individals; or where the testator superadds words of explanation, or fresh words of limitation, and a new inheritance is grafted upon the heirs to whom he gives the estate."

Another exception to this rule of construction is, that the

words "his or her children" are construed to be words of purchase, and not of limitation; and where these words are used the rule in Shelley's case does not apply; and if in the case under consideration the conveyance had been to Mary Wood, for life, with remainder to her children, she would have taken an estate for life, and her children a vested remainder.   But the conveyance under consideration does not come within any of the above exceptions.   There are no words that can be construed to be words of purchase or words of explanation showing an intention to graft a new inheritance upon the heirs of Mary Wood.   The language employed brings the case plainly and unmistakably within the rule in Shelley's case.   After.the death of Mary, the land is to *descend to the heirs of her body*, thus showing that the intention of the grantor was that the heirs of Mary should take by inheritance from their mother, and not a vested remainder by virtue of the deed.  ·

It is contended by the appellees that a subsequent clause in the deed, namely: "The said Mary Wood, in consideration of this deed, receipts and forever quitclaims to any further interest in and to her father's real estate whatever, and that a transfer of said real estate by said Mary Wood shall in no wise be valid," gives the land in question to the heirs of Mary Wood as purchasers; that construing this language with the first part of the deed, takes the case out of the rule in Shelley's case.

This clause was not intended to, and does not, prohibit a transfer of the real estate conveyed to Mary Wood.   The language, "and a transfer of said real estate by the said Mary Wood shall in no wise be valid," applies to that interest in her father's real estate which she quitclaimed to the grantor. It is in one and the same sentence with that part in which she quitclaims to any further interest in and to her father's real estate; and the words, said real estate, by all the rules of construction of the English·language, apply and refer to the last mentioned real estate described immediately preceding those words in the same sentence.   This was a convey-

ance to, and not by, Mary Wood, and this limitation upon the power of alienation could only be binding upon her, if at all, by way of estoppel by reason of her having accepted the conveyance with this condition. But a grantor possesses no power to prohibit the alienation of the real estate conveyed. A grantor may restrict or limit the power of alienation for a period of time, but an absolute prohibition is void. This is well settled by authority and on principle.

We think that it is quite clear that the deeds under consideration vested in Mary Wood an estate in fee simple absolute; that she possessed the undoubted right of alienating the lands, and having exercised that right, she had no estate in the said lands at the time of her death, which could descend to the heirs of her body, and such heirs have no right to question the title of those who claim under and by virtue of her conveyance. The court below erred in overruling the motion for a new trial.

The judgment is reversed, and the cause is remanded, with directions to the court below to grant a new trial, and for further proceedings in accordance with this opinion.

*F. T. Hord,* for appellant.