ROUSE ET AL. *v.* PAIDRICK ET AL.

[No. 27,765. Filed March 29, 1943. Rehearing denied June 22, 1943.]

518

*Louis B. Ewbank,* of Indianapolis, for appellants.

*Kothe & Shotwell,* of Indianapolis, for appellees.

RICHMAN, C. J.—All the parties to this action claim through Daniel Paidrick, a common grantor in possession May 29, 1875, of forty acres in Shelby County. He was married and had one child, Lewis C. Paidrick, who was unmarried and without children. In consideration of love and affection, his wife joining, Daniel

then conveyed the tract to Lewis by warranty deed containing the following provisions:

"The grantors hereby expressly reserve the right to the use, occupation, rents, issues and profits, of all of said lands for and during the natural life of the grantor, Daniel Padrick. This conveyance is also made and accepted subject to the limitations and conditions that the said grantee Lewis C. Padrick shall hold said lands from and after the death of the grantor Daniel Padrick, for and during the natural life of said Lewis C. Padrick only, and at the termination of such life estate of said Lewis C. and at his death said lands to go to his children then living, and to the descendants of those that may be dead,

"And in case that said Lewis C. Padrick, at his death shall not leave surviving him any child or children, or the descendants of his child or children:

"That all of said lands shall go fully and wholly to his brothers and sisters, then living, and to the descendants of those that may be dead at that time, provided, that the descendants of any brother or sister will only take the share of said lands that their ancestors would receive if living. The term 'Brother and Sister' as used in the conveyance, as to the persons who shall take said lands upon the death of said Lewis C. Padrick without issue, is intended to be limited to the brothers and sisters of the full blood, and in no instance or under any circumstances is it intended or shall it be construed to include within its provisions the half brothers and sisters of the said Lewis C. Padrick.

"This deed is made upon the further express conditions that the death of the grantee Lewis C. Padrick, prior to the death of the grantor, Daniel Padrick, shall work and operate as a revocation of this deed and in such case said lands shall revert back to the grantor Daniel Padrick."

March 2, 1878, Lewis conveyed the same real estate to Daniel by warranty deed, the granting clause reading:

"This Indenture Witnesseth, that Lewis C. Padrick (unmarried) of Shelby County in the State of

Indiana, Convey and Warrant to Daniel Padrick of Shelby County, in the State of Indiana for the sum of Five Hundred Dollars the following real estate in Shelby County, in the State of Indiana, towit:"

About five years later Daniel conveyed by warranty deed to William Rouse, who took possession. Appellant Abner Rouse, whose wife is the other appellant, claims under William Rouse. From 1883 to November 5, 1932, when this action was commenced, the Rouse family has been in possession under claim of ownership.

After the conveyance by Lewis to his father, Lewis married and had three children. Two of them and the descendants of the third are the appellees. Daniel died May 27, 1887. Lewis died February 19, 1929.

Appellees brought this action to quiet their title to the real estate. Special findings disclose the above facts. The conclusions were in appellee's favor and judgment was entered quieting their title against appellants.

The complaint stated that Daniel was the owner in fee simple. There were breaks in the record title prior to acquisition by Daniel. Appellants assert that appellees could recover only by proving fee simple title in Daniel and therefore failed in their proof. It was not necessary to trace the title back of the common grantor in possession. *Howard et al.* v. *Twibell* (1913), 179 Ind. 67, 100 N. E. 372.

The deed from Daniel to Lewis is not controlled by the rule in Shelley's case. "Children" is a word of purchase. *Doe on the Demise of Patterson and Another* v. *Jackman* (1854), 5 Ind. 283; *Andrews* v. *Spurlin and Others* (1871), 35 Ind. 262; *Owen et al.* v. *Cooper* (1874), 46 Ind. 525. This was the law when the deed now in question was executed. *Gonzales* v. *Barton* (1873), 45 Ind. 295, is not applicable. It

decides that "lawful issue" were not words of purchase in the will under consideration. *Fletcher* v. *Fletcher* (1882), 88 Ind. 418, and *King* v. *Rhea* (1877), 56 Ind. 1, relied upon by appellants, are discussed in *McIlhinny* v. *McIlhinny* (1894), 137 Ind. 411, where the former is overruled and the latter modified to the extent of its inconsistency with the McIlhinny opinion which holds that "issue of her body" in a deed were words of purchase. None of these cases is here in point.

Apparently it is conceded by appellants that if the rule in Shelley's case is inapplicable, the deed to Lewis gave him a life estate with contingent remainder to his children, then unborn, who might be living at the time of his death and to the descendants of those deceased. Inasmuch as appellees were such children and descendants, we need not consider the effect of the provision for his brothers and sisters if Lewis should die without children and since he died after the death of his father the provision for reversion is unimportant.

Appellants say that the deed from Lewis to Daniel purporting to convey a fee simple destroyed the contingent remainder to the unborn children of Lewis. This argument is based upon the old common-law rule that one owning a life estate upon which contingent remainders are based and who tortiously attempts to convey a greater estate than he has forfeits the life estate resulting in destruction of the contingent remainder. Whatever the English common law was at the time of its adoption in Indiana, or whatever it may be now, is and has been of no consequence in Indiana since 1852 when by statute the rule was declared:

"A conveyance made by a tenant for life or years, purporting to grant or convey a greater estate than he possessed or could lawfully convey, shall not work a forfeiture of his estate, but shall pass to

the grantee or alienee all the estate which the tenant could lawfully convey." § 56-141, Burns' 1933, § 14699, Baldwin's 1934.

By his deed to his father Lewis conveyed only the life estate which he had and appellants' predecessor by his purchase from Daniel acquired only the life estate of Lewis and that reserved by Daniel. Lewis lived a long time and during that time appellants evidently thought they owned the fee. These facts do not enlarge the estate held by them which ceased with his death. The case of *Hull* v. *Beals* (1864), 23 Ind. 25, is no authority to the contrary. The deed there clearly called for an application of the rule in Shelley's case. Whatever else was said was *dictum*.

Judgment affirmed.

NOTE.—Reported in 49 N. E. (2d) 528.

### ON PETITION FOR REHEARING.

RICHMAN, J.—In their brief on petition for rehearing appellants continue to rely upon *Hull* v. *Beals* (1864), 23 Ind. 25, now saying it holds "that a reconveyance by a life tenant to his grantor in whom the reversion is vested will merge and destroy all contingent remainders limited on such life estate, under the common law which that case holds is in force in Indiana." The statement is inaccurate and too broad. Nor is it warranted by the language of the opinion which bases the decision on the premise that "whatever estate passed out of Hull and wife was transmitted no further than Beals and wife; and, as they retransferred it, it was reinvested in plaintiffs, . . ." That premise is sound if the Beals had a fee simple which was possible only by the application of the rule in Shelley's case. If, as Judge Hanna reasons in the

preceding page and a half, the Beals had only a life estate and their heirs, including Cora, had contingent remainders, the premise cannot be true for the remainders certainly passed out of Hull and just as certainly passed "further than Beals and wife" to their heirs, including Cora. Even though the decision might be harmonized with the proposition for which appellants contend, there is no suggestion that any such proposition was in the mind of Judge Hanna. An opinion which does not mention the principle for which the case is supposed to be authority carries little weight, particularly since the decision may be harmonized with another principle which is mentioned in the opinion.

But we do recognize in the facts of that case and of the case at bar a problem which is suggested by appellants' language above quoted. Appellees say that the question is belatedly presented and decline to discuss it. While it is little more than suggested in any of the briefs, we think it cannot be ignored.

At common law a contingent remainder could not be created by conveyance without concurrent creation of a particular estate of freehold as support for the remainder. The reason is stated in *Miller* v. *Miller* (1913), 91 Kan. 1, 136 P. 953, Ann. Cas. 1917A, 918, 920, as follows:

"The doctrine of the particular estate arose from the necessity under the feudal system of always having a tenant to fulfil feudal duties, defend the estate, and represent it so that other claimants might maintain their rights. The only way to pass a freehold estate was by livery of seisin which operated immediately or not at all, and if the freehold became vacant the lord had an immediate right of entry and all limitations of the tenancy came to an end. The result was that in order to create a freehold estate, the enjoyment of which was to be postponed to a future time, it was necessary to support it by a precedent particular estate

> taken out of the inheritance, and to make livery of seisin to the particular tenant, which by fiction inured to the remainder man or remainder men."

Consequently if the particular estate for any reason ceased to exist before the happening of the contingency, *ipso facto* the contingent remainder was destroyed. This could occur through merger of the particular estate with the "next succeeding vested interest, whether a remainder or a reversion." "The merger operated to destroy the freehold estate upon which the contingent remainder was limited and the contingent remainder was necessarily lost there being no freehold estate upon which it could depend. Unless there is some statutory modification of this rule either expressly or by fair implication presumably the rule still obtains." Gavit, Future Interests in Indiana, § 90.

Our inquiry therefore is directed to the question of whether by fair implication there has been such statutory modification and more particularly to the fundamental question whether under our statutes a particular estate is required as foundation for a contingent remainder. If not, then what happened to the life estate of Lewis Paidrick is of no consequence for the remainder, once created, could not be destroyed by his conveyance of his interest and would vest with the happening of the contingency.

The law of seizin was the only reason for the common-law rule that a contingent remainder required support. Seizin has been abolished in Indiana. *Gavit, supra.* When the reason for a rule has ceased, the rule itself should cease. This view is suggested by Dean Gavit and, we think, is sound.

Other than the abolition of estates tail in 1831, Chapter XXIX, § 11, common law rules as to conveyancing and

estates were in force in Indiana with little statu-
tory modification until 1843 when all the statu-
tory law "concerning the acquisition, the enjoy-
ment, and the transmission of property . . ." was
gathered into one chapter.  Ch. 28, R. S. 1843.  The
existing laws were not merely codified; they were sup-
plemented by new statutes making substantial changes
in the common law.  The first three articles of this
chapter, containing 79 sections and occupying 11 pages,
were nine years later condensed into 41 sections occupy-
ing less than 7 pages.  Ch. 23, R. S. 1852.  What re-
mained of the law of seizin after the revision of 1843
completely disappeared in 1852.  Even the word
"seized," which still occasionally appears in the statutes,
has lost its common law significance and is used in the
sense of "owned" or, sometimes, "possessed."  See
*Gavit, supra,* p. 58, note.

In the process of condensation numerous sections
of the 1843 statutes were not carried forward.  From
Article 111 of Chapter 28, eighteen sections were not
reenacted in 1852.  Examination thereof reveals that
most, if not all of them, were surplusage in that they
were merely explanatory of other sections that were
reenacted.  Dean Gavit thinks that this circumstance
is explanatory of the failure to carry forward § 63
which contained "an express provision saving a con-
tingent remainder as against the law of merger."
*Gavit, supra,* § 90.  The House and Senate Journals of
1852 throw no light upon the subject.  The trend of
public opinion was then away from the intricacies of
the common-law.  In the Constitution formulated in
1851 is an express mandate to this Assembly to abolish
common law pleading and practice.  Article VII, Section
20.  The members of the convention desired that the law
be so simple that any voter of good moral character

should be able to practice in all courts. Article VII, Section 21. One member of the convention even introduced a resolution "to abolish the common law of England" which was the occasion of much merriment. Debates in Indiana Convention, Vol. I, pp. 722-724.

It is hardly conceivable that a Legislature so minded would intentionally restore an abandoned common-law concept which not only had lost its support in reason but had already been abolished in England and changed "in divers ways" by statute in many of the states. Ann. Cas. 1917A, pp. 906, 908, 33 Am. Jur., *Life Estates, etc.*, §§ 164, 165, 1 Tiffany, Real Property, §§ 141, 177, *Gavit, supra.* In § 240 of the Restatement of the Law of Property the rule is stated.

> "When a remainder is subject to a condition precedent, the termination, before such condition precedent is fulfilled, of all prior interests created simultaneously therewith does not destroy the remainder."

The historical background and the present statutory status are referred to later in the section.

In Kansas the result was reached as Dean Gavit thinks it should be reached in Indiana. *Miller* v. *Miller, supra.* It is interesting to note from the opinion that an earlier statute (1855) making unnecessary a particular estate to support a contingent remainder and permitting by deed, as well as by will, the creation of an estate of freehold to commence *in futuro,* was condensed in 1859 to this simple statute: "Estates may be created to commence at a future day." In Indiana, § 37 of Ch. 23, R. S. 1852, was result of similar condensation. But Kansas went further and in 1868 eliminated the section. We still have § 37, *supra,* being § 56-139, Burns' 1933, § 14697, Baldwin's 1934. The Kansas general statute as to conveyancing

is substantially like ours (§ 56-103, Burns' 1933, § 14657, Baldwin's 1934) which has stood unchanged since it was adopted as § 4 of Ch. 23 R. S. 1852. The Supreme Court of Kansas, considering such legislative history, stated in conclusion as follows:

"The legislature of 1855 placed conveyances by deed on the same footing as wills so far as the creation of future estates was concerned, but following the lead of legislatures of some of the older states, the Kansas legislature of 1868 undertook not only to permit the granting of future estates but to abolish other common-law restrictions on alienation not suited to allodial tenures and modern conveyancing, and to make transfers of interests in land as free as possible. The concluding portion of section 3 of the act of 1868, quoted above expressly abolishes the common-law ceremony of livery of seisin, which stood as an insuperable bar to the creation of freeholds to begin in futuro unless supported by a particular estate. The language was adapted from statutes of other states, which usually provided that deeds duly acknowledged and recorded should be valid and pass estates in land 'without livery of seisin, attornment, or other ceremony whatever.'

"It follows that the remainders to Nettie J. Miller and to the heirs of the body of George W. Miller do not require the support of the life estate to George W. Miller in order to be valid."

We think the same result has been accomplished by the similar Indiana statutes. Consequently, we hold that no particular estate was necessary to support the contingent remainders of appellees and they were unaffected by the deed from Lewis to David. That deed carried all of Lewis' interest to David. His subsequent deed to William Rouse carried all of his interest. Neither of them could convey the interests of the contingent remaindermen. When Lewis, who survived

David, died leaving appellees his children and grandchildren surviving, the remainders vested.

As Dean Gavit suggests in § 90 it has been assumed in two Indiana cases since 1852 that a contingent remainder may still be destroyed by merger but no case has been found so deciding. Since there has been no previous judicial examination of the question we feel free to adopt the view taken in *Miller* v. *Miller*, despite appellant's contention that *Hull* v. *Beals* decides otherwise. Their further contention that our decision impairs the obligation of a contract is unsound. On their facts, *Haskett* v. *Maxey* (1893), 134 Ind. 182, 33 N. E. 358 and *Stephenson* v. *Boody* (1894), 139 Ind. 60, 38 N. E. 331, upon which appellants rely for such contention, are distinguishable in that the statute involved had received uniform judicial construction in numerous cases over a long period of years. It may also be observed that the authority of the two cases, both based upon a dictum in *Insurance Co.* v. *Debolt* (1853), 16 How. 415, is shaken by the later decisions contra of the United States Supreme Court referred to in 16 C. J. S., *Constitutional Law,* § 280, including *Fleming* v. *Fleming* (1924), 264 U. S. 29, 68 L. Ed. 547, 44 Sup. Ct. 246.

The petition for rehearing is overruled.

NOTE.—Reported in 49 N. E. (2d) 528.