Charles R. RIDER, Appellant–Petitioner

v.

Leslie Anne RIDER, Appellee–Respondent.

No. 48A02–9312–CV–0680.

Court of Appeals of Indiana, Second District.

March 27, 1995.

Joan Bashaw Gregg, Gregg & Bybee, Anderson, for appellant.

David W. Stone IV, Stone Law Office, and Ronald L. McNabney, Anderson, for appellee.

## OPINION

KIRSCH, Judge.

Charles R. Rider appeals from the trial court's award of maintenance and fees to his former wife, Leslie Anne Rider.

He presents the following issues,[1] for review:

1. Was the trial court's maintenance award an unconstitutional impairment of the parties' antenuptial agreement.

2. Did the trial court err in awarding maintenance to Leslie in contravention of the parties' antenuptial agreement.

We affirm.

## FACTS

Charles and Leslie Rider were married on February 14, 1988. Before they were married, Charles and Leslie signed an antenuptial agreement which provided, in part, that: "It is mutually agreed by and between both parties that each party, in the case of a separation of the parties hereto, shall have no right as against the other by way of claims for support, alimony, attorney fees, legal and court costs, or division of property." *Record* at 163–64. At the dissolution hearing, Leslie introduced evidence that she suffered from inflammatory neuropathy, which caused her to quit work for health reasons. Her treating neurologist testified that Leslie was unable to work due to her condition. Leslie had no employment income, but she owned a house, had some money in a bank account, received child support from a previous marriage and had personal property of an undetermined value.

## DISCUSSION AND DECISION

### ISSUE ONE: UNCONSTITUTIONAL IMPAIRMENT OF CONTRACT

■ The general law of contracts applies to antenuptial agreements. *Rose v. Rose*

(1988), Ind.App., 526 N.E.2d 231, 236, *trans. denied; Harlan v. Harlan* (1989), Ind.App., 544 N.E.2d 553, 556–57, *aff'd,* Ind., 560 N.E.2d 1246 (1990). Article I, § 10 of the United States Constitution, in part, provides: "No state shall ... pass any ... law impairing the obligation of contracts...." A similar provision is found in Article I, § 24 of the Indiana Constitution: "No ... law impairing the obligation of contracts, shall ever be passed."

In the nineteenth century state and federal courts interpreted these constitutional provisions as prohibiting impairment of contracts resulting from a change in the judicial interpretation of statutes. In *Haskett v. Maxey* (1893), 134 Ind. 182, 33 N.E. 358, our supreme court held:

> "The sound and true rule is, that if the contract when made was valid by the laws of the state, as then expounded by all the departments of its government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent act of the legislature of the state, *or decision of its courts,* altering the construction of the law."

*Id.,* 134 Ind. at 191, 33 N.E. at 360 (emphasis added) (quoting *Ohio Life Ins. & Trust Co. v. Debolt* (1853), 57 U.S. 416, 432, 16 How. 416, 432, 14 L.Ed. 997, 1004). In *Haskett,* the court did not indicate whether the contract impairment it found was prohibited by the state constitution, the federal constitution, or both. The next year, in *Stephenson v. Boody* (1894), 139 Ind. 60, 38 N.E. 331, our supreme court also relied upon *Debolt* in holding that both the state and federal constitutions prohibited contract impairment resulting from changes in judicial interpretation. This interpretation survived into the twentieth century in our decision in *Ruf v. Mueller* (1911), 49 Ind.App. 7, 12–13, 96 N.E. 612, 614, which relied upon *Haskett* and *Debolt.*

---

1. In the Statement of the Issues and Summary of the Argument in his Brief, Charles also alleges the trial court erred in awarding Leslie provisional maintenance and attorney fees and ordering Charles to pay Leslie's expert witness's fee. Neither issue is argued in Charles' Brief, and a transcript of the hearing on the award of provisional maintenance and attorney fees was not included with the record; consequently both issues are waived. *See National By–Products, Inc. v. Ladd* (1990), Ind.App., 555 N.E.2d 518, 520–21; *Raymundo v. Hammond Clinic Ass'n* (1983), Ind., 449 N.E.2d 276, 281.

Charles contends that our supreme court's decision in *In re Marriage of Boren* (1985), Ind., 475 N.E.2d 690, specifically authorized antenuptial agreements and required trial courts to enforce such agreements in the absence of fraud, duress, or misrepresentation. Charles then argues that because his agreement was executed after *Boren* but before more recent appellate decisions which allow a trial court to review an antenuptial agreement for unconscionability, to apply the more recent holdings violates the constitutional prohibition against impairment of contracts resulting from changes in judicial interpretation.

We do not agree with Charles that the holding in *Boren* limits the trial court's review of an antenuptial agreement to issues of fraud, duress, or misrepresentation. There, the trial court and our supreme court also reviewed the agreement for unconscionability before concluding that it should be enforced as written. *Boren*, 475 N.E.2d at 694 ("[T]he trial judge found nothing which rendered the agreement unconscionable, and neither do we.").

■ Since *Debolt* was decided, the United States Supreme Court has held that the constitutional prohibition against impairment of contracts applies only to legislative action, not to judicial decisions. In *Tidal Oil Co. v. Flanagan* (1924), 263 U.S. 444, 44 S.Ct. 197, 68 L.Ed. 382, the Court said:

"It has been settled by a long line of decisions, that the provision of section 10, article 1, of the federal Constitution, protecting the obligation of contracts against state action, is directed only against impairment by legislation and not by judgment of courts. The language—'No state shall * * * *pass any* * * * *law* impairing the obligation of contract'—plainly requires such a conclusion."

*Id.* at 451, 44 S.Ct. at 198, 68 L.Ed. at 385 (footnote omitted). *See also Barrows v. Jackson* (1953), 346 U.S. 249, 260, 73 S.Ct. 1031, 1037, 97 L.Ed. 1586, 1597. Indiana appellate courts must follow decisions of the United States Supreme Court interpreting the United States Constitution. *See Waggoner v. Feeney* (1942), 220 Ind. 543, 548, 44 N.E.2d 499, 501. Consequently, *Haskett*, *Stephenson*, and *Ruf* have been tacitly over-

ruled in their interpretation of the federal constitution.

■ Our supreme court has acknowledged the United States Supreme Court's change in interpretation, *Rouse v. Paidrick* (1943), 221 Ind. 517, 49 N.E.2d 528, ("the authority of the two cases [*Haskett* and *Stephenson*], both based upon a dictum in *The Ohio Life Insurance and Trust Company v. Debolt* (1853), 16 How. 415, is shaken by the later decisions contra of the United States Supreme Court...."), and limited the application of *Haskett* and *Stephenson* to changes in longstanding statutory interpretation. *Rouse*, 221 Ind. at 530, 49 N.E.2d at 533 (opinion on rehearing). Thus, the state constitutional prohibition against impairment of contract resulting from changed judicial interpretation applies only to cases of statutory interpretation where "the statute involved had received uniform judicial construction in numerous cases over a long period of years." *Rouse*, 221 Ind. at 530, 49 N.E.2d at 533.

■ The trial court's nonenforcement here of a provision of the antenuptial agreement does not result from a changed judicial interpretation of a statute. Accordingly, the nonenforcement is not an unconstitutional impairment of contract under either the state or federal constitutions. We do not reach the issue of whether Article I, § 24 of the Indiana Constitution is coterminous with the United States Supreme Court's interpretation of the analogous provision of the federal constitution as announced in *Tidal Oil* and subsequent cases.

### ISSUE TWO: ENFORCEMENT OF NON–MAINTENANCE PROVISION

Charles next contends that the trial court's award of maintenance was prohibited by the express terms of the antenuptial agreement, is contrary to law, and is an abuse of discretion. Leslie argues that her inability to support herself allows the trial court to disregard the agreement terms prohibiting support or alimony.

Our supreme court has held that antenuptial agreements fixing the property rights of each party upon dissolution of the marriage

must be honored and enforced by the courts as written, absent a showing of fraud, coercion, undue influence, or other matters making the agreement unconscionable. *Boren,* 475 N.E.2d at 694. Generally, our review for fraud, coercion, undue influence or unconscionability has focused on the circumstances surrounding the pre-marriage drafting and execution of the agreement. *See, e.g., Matuga v. Matuga* (1992), Ind.App., 600 N.E.2d 138, 141, *trans. denied.* Since *Boren,* we have had occasion to consider whether events at the time of the marriage dissolution might make an antenuptial agreement unconscionable. In *Justus v. Justus* (1991), Ind.App., 581 N.E.2d 1265, *trans. denied,* after review and consideration of many non-Indiana authorities, we concluded that: "If an antenuptial agreement dividing property between the parties would leave a post-dissolution reality in which one spouse would not have sufficient property to provide for his reasonable needs, then the court may refuse to enforce the antenuptial agreement." *Id.* at 1274.

The same logic that applies to property divisions set forth in antenuptial agreements applies as well to antenuptial provisions limiting or eliminating maintenance, support or alimony. As the Ohio Supreme Court observed:

"We believe that the underlying state interest in the welfare of the divorced spouse, when measured against the rights of the parties to freely contract, weighs in favor of the court's jurisdiction to review, at the time of a subsequent divorce, the terms in an antenuptial agreement providing sustenance alimony for one of the parties. There is sound public policy rationale for not strictly enforcing such a provision which, even though entered into in good faith and reasonable at the time of execution, may have become unreasonable or unconscionable as to its application to the spouse upon divorce. It is a valid interest of the state to mitigate potential harm, hardship, or disadvantage to a spouse which would be occasioned by the breakup of the marriage, and a strict and literal interpretation of the provisions for maintenance of the spouse to be found in these agreements."

*Gross v. Gross* (1984), 11 Ohio St.3d 99, 109, 464 N.E.2d 500, 509. *See also, Lewis v. Lewis* (1988), 69 Haw. 497, 502–03, 748 P.2d 1362, 1366–67; *MacFarlane v. Rich* (1989), 132 N.H. 608, 614–15, 567 A.2d 585, 591. The Indiana General Assembly has implicitly recognized the same underlying state interest by giving the judge presiding over a dissolution the power to award maintenance to a spouse found to be so physically or mentally incapacitated as to affect his or her ability for self-support. *See* IC 31–1–11.5–11(e)(1) (1988 Ed.). An antenuptial provision may be unconscionable if it denies maintenance to a spouse who satisfies the statutory criteria set forth in that section.

■■■ Therefore, we hold that an antenuptial agreement which is entered into in good faith, with full disclosure and with no fraud or overreaching, should be enforced as written; however, the terms of the agreement will also be subject to judicial scrutiny for unconscionability caused by circumstances existing at the time of dissolution. An antenuptial provision limiting or eliminating spousal maintenance is unconscionable and will not be enforced when it would deprive a spouse of reasonable support that he or she is otherwise unable to secure. *See Newman v. Newman* (1982), Colo., 653 P.2d 728, 734–35; *Unander v. Unander* (1973), 265 Or. 102, 107, 506 P.2d 719, 721.

■■■ Our review, however, does not end with this conclusion. Charles timely requested written special findings pursuant to Ind.Trial Rule 52(A). When properly requested, the trial court is required to make complete special findings. *Dahnke v. Dahnke* (1989), Ind.App., 535 N.E.2d 172, 175. Special findings are complete if they are "sufficient to disclose a valid basis under the issues for the legal result reached in the judgment." *In re Marriage of Miles and Frank D. Miles, Jr.* (1977), 173 Ind.App. 5, 8, 362 N.E.2d 171, 174. We apply a two-tier standard of review to those findings: first, we determine whether the evidence supports the trial court's findings, and then we determine whether the findings support the judgment. *ITT Indus. Credit Co. v. R.T.M. Development Co.* (1987), Ind.App., 512 N.E.2d 201, 203. When we consider whether the

evidence supports the trial court's special findings, we may not reweigh the evidence or reassess witness credibility. *Id.* Where the evidence is in conflict, we are bound to consider only that evidence which supports the special findings. *Id.* We will set aside special findings only if they are clearly erroneous. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, 870, *trans. denied.*

 In support of its maintenance award, the trial court found that: 1) Leslie suffers from a severe form of inflammatory neuropathy and, due to that condition, is unable to work to support herself; 2) Leslie had assets available for her support, including her house and bank deposits, worth approximately $65,000 to $75,000; 3) Leslie's assets are not sufficient to provide for her support; and, 4) the antenuptial provision denying Leslie maintenance should not be enforced, because enforcing the provision would leave her unable to provide for her reasonable needs, citing to *Justus,* 581 N.E.2d at 1274. These findings sufficiently support the court's maintenance award to Leslie and are supported by the evidence introduced at trial.

Affirmed.

SULLIVAN and NAJAM, JJ., concur.